UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| 62-64 Kenyon St. Hartford, LLC and Paul Rosow | : : : | Docket No. 3:16-CV-00617(VAB) |
| Plaintiffs | : : | |
| v. | : : | |
| City of Hartford | : : | |
| Defendant. | : : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, 62-64 Kenyon Street Hartford, LLC ("Rooming House"), is a Connecticut limited liability company that has operated a rooming house at 62-64 Kenyon Street in Hartford, Connecticut since 1960. Compl., ECF No. 1, ¶1, ¶6. Co-Plaintiff Paul Rosow ("Mr. Rosow") manages the Rooming House and owns the property. *Id.* at ¶3, ¶9. Defendant, City of Hartford ("Hartford" or "City"), is a municipality organized under the laws of the State of Connecticut and is empowered to grant licenses to rooming house operators. *Id.* at ¶5. The Plaintiffs challenge an ordinance passed by the City in July 2015, which requires proof of owner occupancy as a prerequisite for rooming house licenses.

The City argues that the case is moot because a revised zoning map, which the City passed in January 2016, rendered the allegedly unconstitutional owner occupancy requirement unenforceable. Mr. Rosow argues that the case is not moot because the City may attempt to enforce the allegedly illegal ordinance, and also because their claims for damages—nominal damages, compensatory damages, punitive damages and legal fees—prevents dismissal for mootness. For the reasons that follow, the Defendant's motion is DENIED.

I. **Factual Allegations**

Hartford's Municipal Code defines a rooming house as "any residential structure" for which the principal purpose "is to provide lodging, but not meals, for compensation, by pre-arrangement for definite periods, for three or more persons." Compl., ¶7. The City of Hartford requires licenses for businesses that operate rooming houses. *Id.* at ¶5.

Mr. Rosow owns and manages the Rooming House. Compl., ¶3, ¶9. He has lived in Scottsdale, AZ since 2014. Compl., ¶3. He lived in Hartford, but not at the Rooming House, from 1986 to 2014. *Id.* at ¶4. Since 1986, he has appointed a designated agent to reside in the rooming house. *Id.* at ¶9. Because the designated agent lived at the Rooming House, Mr. Rosow was able to receive a license for the Rooming House from the City, although he himself did not live there. *Id.* Plaintiffs have held a valid license for the property's use as a rooming house since 1987. R. 26(f) Report (Stmt. Undisputed Facts), ¶4. Plaintiffs' most recent rooming house license was valid through June 30, 2016. Compl., ¶10.

At some point before July 13, 2015, Mr. Rosow secured a buyer for the Rooming House. Compl., ¶65. The buyer planned to operate the property as a rooming house in the same manner as Mr. Rosow had, and offered to pay Mr. Rosow in excess of $375,000. *Id.* On July 13, 2015, Hartford enacted an ordinance amending Ch. 18, Art. VII of the City's Municipal Code relating to rooming houses ("the Ordinance"). *Id.* at ¶53. Sec. 18-164 of the Ordinance provides:

> The licensee who obtains a license under this Article shall reside in the rooming house. In the R-6, R-7, and R-8 zoning districts, no license or license renewal shall be issued to a licensee who is not the owner or majority owner of the property. A licensee who is not the owner of the real shall have a valid power of attorney from the owner, not more than one (1) year old, which gives the licensee authority to do all things necessary to manage and operate the rooming house, including, without limitation, to collect, deposit and spend the rents from roomers, to pay bills, to make repairs, to correct violations, and to allow inspections of the premises.

*Id.* at ¶55; See also Compl. Ex. 26. Sec. 18-164 would go into effect on June 30, 2016. *Id.* at ¶59. Sec. 18-164 only applied to certain residential districts in the City, which were designated on the

City's zoning Map as R-6, R-7 and R-8. *Id.* Rooming houses in other parts of the City were not affected by the Ordinance and did not need to be owner-occupied to get a license. *See* R. 26(f) Report, ¶3. Indeed, the Plaintiffs' property was the only rooming house in the R-6, R-7, and R-8 zoning districts and was thus the only rooming house affected by Sec. 18-164. *Id.*

In October 2015, Mr. Rosow corresponded by e-mail with Hartford's Corporation Counsel, Henri Alexandre, about the Ordinance. *Id.* at ¶58. Mr. Alexandre told Mr. Rosow that because of the Ordinance, Mr. Rosow could not get a rooming house license unless he moved onto the property, and could not meet the residency requirement using a resident agent with power of attorney on behalf of Mr. Rosow. Ex. 1 to Rosow Aff., Oct. 6 e-mail from Henri Alexandre, ECF No. 25-2.

Mr. Rosow alleges that City officials passed the Ordinance in response to complaints from the West End Civic Association ("WECA"), an unincorporated group of residents of the neighborhood near the Rooming House. Compl., ¶¶11-16. At some point in late 2015, Mr. Rosow made a Freedom of Information Act ("FOIA") request of the City. Rosow Aff., ¶¶13-14. The response revealed e-mail correspondence between WECA and City employees regarding Rosow's rooming house. *Id.* at ¶15. *See also* Compl., ¶11.

Citing the results of his FOIA request, Mr. Rosow alleges that WECA members began to complain about the rooming house to City officials and employees as early as 2011, mounting a several-year campaign to eliminate the Rooming House as a blight on their single-family neighborhood. Compl.*,* ¶11. Mr. Rosow also alleges that members of WECA urged the City's Director of Licenses & Inspections to conduct "surprise inspections" of his property, at one point requiring Mr. Rosow's agent to provide photo identification to the inspector. *Id.* at ¶¶22-23. Eventually, Mr. Rosow alleges, WECA members encouraged City Council members to pass an ordinance specifically targeting rooming houses with non-resident owners, based on their knowledge that Mr. Rosow lived in Arizona. Compl., ¶35. Mr. Rosow alleges that WECA urged the City to

deny the Rooming House's license "in furtherance of its goal to eliminate low-income minorities in need of short term housing" from the neighborhood. Id. at 11.

On May 8, 2015, the City Council's Agenda contained a bill regarding rooming houses sponsored by Hartford's former Mayor. Compl., ¶33. In the days that followed, members of WECA allegedly campaigned against the bill because it would not specifically require Mr. Rosow to reside at the Rooming House as a condition of the license. Id. at 34. WECA allegedly corresponded with the City Council President urging the passage of a revised bill that would specifically target rooming houses with non-resident owners. Id. at 36. Members of WECA also met with the City's Corporation Counsel and the Office of Licenses & Inspections regarding the "perceived deficiencies" of the rooming house bill. Id. at ¶¶37-42. The Corporation Counsel expressed some concern about the legality of the bill. Id.

On May 13, 2015, the Plaintiffs allege that a certain WECA member wrote an e-mail to the former Mayor of Hartford stating that he was displeased that Corporation Counsel "made matters worse" by expressing concern about the legal implications of WECA's proposed owner occupancy requirement. Id. at ¶41. At that point, the Corporation Counsel allegedly revised the proposed ordinance to include the requirement that WECA requested. Id. at ¶42.

In June 2015, a WECA member allegedly provided the Corporation Counsel with a draft of the ordinance that included the owner occupancy requirement. Id. at ¶47. Later that month, WECA members allegedly drafted a memorandum providing "justification" for the Ordinance, which the Corporation Counsel received and edited. Id. at ¶¶49-52. Several weeks later, on July 13, 2015, the City Council enacted the Ordinance. Id. at ¶53.

On January 12, 2016, the City adopted a new Zoning Map which did not use the designations R-6, R-7 and R-8. Compl., ¶60. The new Zoning Map replaced the R designation, which meant Residential, to N, which means Neighborhood. Id. at ¶61. The areas that had once included the R-6, R-7 and R-8 zones were labeled N-2-1 in the new Zoning Map. See Rosow Aff., Ex. 9, ECF No. 25-

10, Alfin Letter, 2.  After the passage of the new Zoning Map, as the City explains in its Motion, the R-6, R-7 and R-8 zones "ceased to exist."  Def.'s Mem., ECF No. 24-1, 2.

In February and March 2016, Mr. Rosow and his attorney met with the City to discuss the residency requirement.  On March 8, 2016, Jared Alfin, attorney for the Plaintiffs, wrote to the City requesting that it either (1) amend the municipal code to eliminate the July 2015 ordinance; (2) eliminate the part of the ordinance that refers to the R-6, R-7 and R-8 zoning districts; or (3) add a grandfather clause to the amended ordinance.  Rosow Aff. Ex. 9, Alfin Letter, p. 2-4.

When the parties discussed the new Zoning Map initially, the City did not suggest that the residency requirement in Sec. 18-164 would cease to exist.  Mr. Alfin's letter referenced the January 19, 2016 change to zoning regulations, which eliminated the zones to which Sec. 18-164 applied. Alfin argued that the new map rendered the 2015 Amendment "null and void."  Rosow Aff., Ex. 9, Alfin Letter, 2; Rosow Aff., ¶22.  In response, Mr. Rosow said, representatives of the City told him that the City "would not re-write the Ordinances concerning the residency requirement, which meant it still applied to the Rooming House."  Rosow Aff., ¶23.

Mr. Rosow filed his Complaint on March 30, 2016.  The City submitted an Answer to the Complaint on June 20, 2016.  *See* Answer, ECF No. 19.  In its Answer, the City admitted the Plaintiffs' allegation that the City had adopted a new zoning map that no longer uses the designations referenced in Sec. 18-164, but did not allege that the case was moot.  *Id*. at ¶60.  On September 22, 2016, the City moved to dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that the new Zoning Map rendered Sec. 18-164 unenforceable and the case moot. *See* Mot. to Dismiss, ECF No. 24.

## II. Standard of Review

In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129,

131 (2d Cir. 1998).  The Plaintiffs bear the burden of showing that subject matter jurisdiction is proper based on facts existing at the time they filed the complaint.  *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citations omitted).

### III.  Discussion

The City argues that the case has become moot and that this Court is required to dismiss it for lack of jurisdiction.  *See* F. R. Civ. P. 12(b)(1) ("a party may assert the following defenses by motion," including "lack of subject matter jurisdiction").  The Plaintiffs suggest that the Court has jurisdiction over their claims for damages, even if the new Zoning Map renders Sec. 18-164 unenforceable.  The Court agrees with the Plaintiffs.

When a case becomes moot, the federal courts lack subject matter jurisdiction over the action.  *Fox v. The Board of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994).  Article III of the United States Constitution, requires that "there be a live case or controversy at the time that a federal court decides [a] case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987).  Under the mootness doctrine, a defendant's voluntary cessation of its allegedly illegal activities may render a case moot if the defendant can demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996), citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations and internal quotations omitted).

Generally, when a lawmaker withdraws an allegedly unconstitutional law, any plaintiff's request for an injunction against its application becomes moot.  *Campbell*, 80 F.3d at 706.  *See also Burke*, 479 U.S. at 363-64 (holding that when a challenged statute "by its own terms [becomes] a dead letter," the case is mooted).  In *Campbell*, the Second Circuit reviewed the dismissal of a challenge to a question on the state Bar Association's character and fitness assessment.  *Id.* at 704-5.  The court found the case to be moot because "there was no reason to believe" that the Bar would

reinstate the offending question, which had been withdrawn two and a half months before Campbell filed suit. *Id.* Because defendants had withdrawn the allegedly unconstitutional question before the lawsuit was filed, the court recognized that "there is nothing to indicate that it did so merely to avoid judicial scrutiny." *Id.* at 706. Similarly, the Second Circuit has found that a plaintiff's challenge to a fiscal assessment law was moot because both parties agreed that the state was no longer implementing the law, and there was "no reason to expect that the fiscal assessments are now occurring or that the legislature will reenact the laws." *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001).

"In certain circumstances it may be possible for a claim of declaratory relief to survive, notwithstanding the mootness of a companion claim for an injunction." *Campbell*, 80 F.3d at 706. In such cases, "the question … is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. NewKirk*, 422 U.S. 395, 402 (1975) (citations omitted). Issuing a declaratory judgment in an otherwise moot case is only appropriate when the "behavior complained of is of such a nature that it might predictably be repeated again," in which case "a prior declaratory judgment may serve the useful purpose of facilitating an injunction at a future date." *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 816 (2d Cir. 1975).

In this case, both parties agree that Sec. 18-164 should be unenforceable because of the revised zoning map. However, there is no suggestion in the City's Municipal Code that the Sec. 18-164 is no longer enforceable. As a result, if a City official did attempt to enforce the Ordinance against the Plaintiffs, the Plaintiffs would have to seek an order declaring the Ordinance unenforceable, as counsel for the City rightfully conceded at oral argument. Thus, given the inquiry

at this stage of the proceedings, the City's allegedly offensive conduct might "be repeated again." *Browning.*, 524 F.2d at 816.  For this reason, Mr. Rosow's claims for injunctive relief are not moot.[1]

The Complaint also contains claims for damages that, Plaintiffs argue, preserve the Court's jurisdiction in this case.  The Court agrees that these claims are not moot and would not be mooted even if Plaintiffs' claims for injunctive relief presented no "live controversy."

A claim for damages stemming from an allegedly illegal government action can be "sufficient to ensure that the requisite case or controversy exists," even after government voluntarily abandons the action.  *Davis v. Village Park II Realty Co.*, 578 F.2d 461 (2d Cir. 1978).  In *Davis*, the Second Circuit held that a federal housing tenant's claim for injunctive relief against the defendant's allegedly unconstitutional eviction was mooted by the defendant's agreement to drop the eviction proceeding.  *Id.* at 463-64.  The *Davis* court nevertheless held that the "availability of either nominal or substantial damages [was] sufficient" to prevent the mootness doctrine from applying.  *Id.*; *see also Beyah v. Coughlin*, 789 F.2d 986, 988-89 (2d Cir. 1986) (finding that transfer of plaintiff to a different prison "may well moot [his] claims for declaratory and injunctive relief, [but] the complaint also sought compensatory and punitive damages for the period in which the alleged deprivation occurred, [and t]hese requests were not mooted by Beyah's transfer."); *McCabe v. Nassau County Medical Center*, 453 F.2d 698, 701-702 (2d Cir. 1971) (in an action under 42 U.S.C. § 1983, damage claim was not mooted even though plaintiff no longer needed equitable relief, because a "properly alleged damage claim was in the case from the start and was not inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.").  In *Davis*, even the defendant's potential liability for attorneys' fees under 42 U.S.C. § 1988 "prevented the case from becoming moot." *Davis*, 578 F.2d at 463-64.

---

[1] This aspect of the Court's ruling, of course, is without prejudice to renewal by the City on a motion for summary judgment, showing that there is no factual basis for believing the City could enforce the Ordinance after the passage of the new Zoning Map.

Following *Davis*, a request for even nominal damages or attorneys' fees will ensure the survival of a plaintiff's claim, even when the defendant has ceased the offending action. *Davis*, 578 F.2d at 463. However, dismissal of an otherwise moot case may be appropriate if the claims for damages lack merit. *Granite State Outdoor Adver., Inc. v. Zoning Bd.*, 38 F. App'x 680, 683 (2d Cir. 2002). In a summary opinion that the plaintiff's challenge to the defendant city's signage regulation was moot because the regulation had been amended, the Second Circuit "saw no reason to suspect that the former sign regulations would be re-enacted," and found that the plaintiff's claims for damages were also moot because they were "meritless." *Id.* In *Granite State*, the plaintiff's alleged damages resulted from the defendant's denial of its application for a sign permit. *Id.* The court determined that the defendant would have denied plaintiff's application anyway because the proposed sign failed to meet constitutional restrictions on sign size. *Id.* ("Because Granite State's claims for injunctive relief are moot and its claim for damages is without merit, we dismiss its claims against Stamford's sign regulations.").

Mr. Rosow claims that Sec. 18-164 violates the U.S. and Connecticut Constitutions, Connecticut's zoning enabling statutes, and the federal and state Fair Housing Acts. He requests a Declaratory Judgment stating that Sec. 18-164 is unconstitutional, a preliminary and permanent injunction restraining enforcement of Sec. 18-164, an award of damages in "amount of economic loss if enforcement is not enjoined," and monetary damages, including punitive damages for harm already suffered. The City has not alleged that Mr. Rosow's claims for damages are meritless or that he would have been denied a license even if Sec. 18-164 had not been passed. Also, as discussed above, at this stage of the proceedings, there is a question as to whether Sec. 18-164 is truly unenforceable. As a result, the Plaintiffs' claims are not moot and are sufficient to allow this lawsuit to proceed for now.

## IV. Conclusion

The Defendant's Motion to Dismiss [Doc. No. 24] is DENIED.

SO ORDERED at Bridgeport, Connecticut this 2nd day of January 2017.

                                        /s/ Victor A. Bolden_____

                                        VICTOR A. BOLDEN

                                        UNITED STATES DISTRICT JUDGE

Case 3:16-cv-00617-VAB   Document 33   Filed 01/02/17   Page 10 of 10