| | |
|---|---|
| 62-64 KENYON STREET, HARTFORD LLC, PAUL ROSOW,      Plaintiffs, <br><br> v. <br><br> CITY OF HARTFORD,      Defendant. | No. 3:16-cv-00617-VAB |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

62-64 Kenyon Street Hartford, LLC, ("Rooming House" or the "Kenyon Street LLC"), a Connecticut limited liability company that operated a rooming on Kenyon Street in Hartford, and its sole member, Paul Rosow, filed this lawsuit alleging violations of statutory and constitutional rights by the City of Hartford ("the City" or "Hartford"). The claims relate specifically to an ordinance passed by the City that required rooming houses to be owner-occupied in order to be licensed. Plaintiffs allege that the ordinance was passed to deliberately target Mr. Rosow, who lives in Arizona and would be unable to meet the residency requirement.

Defendants now move for summary judgment. For the reasons stated below the summary judgment will be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hartford's Municipal Code defines a rooming house as "a residential structure" for which the principal purpose "is to provide lodging, but not meals, for compensation, by pre-arrangement for definite periods, for three (3) or more persons." Hartford Municipal Code

Article VII, § 18-161. The City of Hartford requires licenses for businesses that operate rooming houses. Hartford Municipal Code Article VII, § 18-163.

In 1986, Paul Rosow purchased the property at 62-64 Kenyon Street, which he believes has operated as a rooming house since the 1900s. Rosow Aff. at ¶ 7, ECF No. 45-2 ("Rosow Aff."). Mr. Rosow continued to operate the property as a rooming house from 1986 until he sold the property in April, 2017, after this litigation had begun. *Id.* ¶¶ 6, 21. At some point, Mr. Rosow transferred the Rooming House to an LLC, 62-64 Kenyon Street Hartford, LLC; Mr. Rosow was the LLC's sole member. Def. 56(a)(1) Stmt. ¶ 1, ECF No 50-1.[1]

Mr. Rosow lived in Hartford, Connecticut from 1985 until 2014, when he moved to Scottsdale, Arizona. Rosow Aff. ¶¶ 4-5. He never resided at the Rooming House, however, and instead appointed a designated representative to reside there and manage the property, as was permitted at that time under prior Hartford zoning laws. *Id.* ¶ 7. While the house was located in a residential zone, it was considered to be a pre-existing non-conforming use, and its commercial use as a rooming house was exempt. Def. 56(a)(1) Stmt. ¶ 5.

Rooming house licenses must be renewed every year. In 2014, Mr. Rosow's license renewal was delayed. *See* Loos Dep. at 66, Def. Mot. Summ. J., Ex. 4, ECF No. 44-4. City officials sent inspectors to the property twice unannounced, including an inspection by Daniel

---

[1] Kenyon Street LLC never submitted a 56(a)(2) statement. *See* L. Civ. R. 56(a)(2) (A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact . . . ."). Therefore, all facts in Defendants' 56(a)(1) statement are deemed admitted. Additionally, because Plaintiff has failed to file this statement, the Court is permitted to "grant[] the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law." L. Civ. R. 56(a)(3).

Loos, then-Director of the City's Licenses and Inspections Division, himself. *Id.* at 49-50. The City eventually granted the license in 2014, however, and continued to grant the license throughout Mr. Rosow's ownership of the property. Def. 56(a)(1) Stmt. ¶ 4, 6, 9.

On July 13, 2015, the City of Hartford enacted an ordinance that required that any individual seeking a license to operate a rooming house must reside at the rooming house in order to obtain a license. 26(f) Rep. ¶ 8, ECF No. 18. The ordinance specifically mentioned three zones — including Zone R-7, where the Rooming House was located — where "no license or license renewal shall be issued to a licensee who is not the owner or majority owner of the property." *See* Hartford Municipal Code Article VII, § 18-164.

While the text of the ordinance applied to all rooming houses within those zones, 62-64 Kenyon Street was the only rooming house affected by the change. 26(f) Rep. ¶ 18. Mr. Rosow alleges that he was told by the Corporation Counsel for the City of Hartford that the Rooming House would not be issued a new license in June 2016 unless he moved into the property. Rosow Aff. ¶ 19.

At some point in late 2015, Mr. Rosow began to try to sell the Rooming House. He alleges that he had finalized a deal with Michele LeConche to purchase the property. Ms. LeConche was to be joined by a business partner, and the three tentatively agreed on a purchase price of $375,000. LeConche Aff ¶ 3, Pl. Rep. to Def. Surreply Br., Ex. C. Ms. LeConche, however, met with Daniel Loos, who informed her that if they purchased the hotel, either her or her partner would have to live at the property. *Id.* ¶ 4-5. That initial purchase then fell through.

On October 30, 2015, Mr. Rosow and his attorney submitted a request under Connecticut's Freedom of Information Act. *See* Rosow Aff. ¶ 22. The request sought copies of all rooming house licenses issued by the city from 2012 until present, as well as "copies of any

and all non-privileged" voice recordings of meetings, meeting minutes, proposals, referendums, correspondence, drafts, memorandums, letters, notices, or other documents related to either the ordinance or the Rooming House. *See* Freedom of Information Act Request at 1, Rosow Aff., Ex 10. In response, Mr. Rosow alleges that there were "hundreds of e-mail communications between [City] employees and several individuals associated with an unincorporated group known as the West End Civic Association." Rosow Aff. ¶ 23.

The e-mails document repeated complaints by WECA members about the Rooming House. *See, e.g,* E-mail from Carolyn West to Shawn Wooden, October 28, 2014, Rosow Aff., Ex. 11; E-mail from Sara Bronin to Sandra Bobowski, September 4, 2014, Rosow Aff., Ex 12. WECA members also appear to have urged City officials to suspend the license, and continually pressed City officials to complete unannounced visits in order to ensure that the resident management was present. *See, e.g,* E-mail from Carolyn West to Daniel J. Loos, October 28, 2014, Rosow Aff. Ex. 11. In reaction, one inspector for the city noted that "I just feel like we're singling him out and I'm concerned that I may be subject to a harassment suit" when requested to make another surprise visit to the property. E-mail from Elisha Barrows to Daniel Loos, October 28, 2014, Rosow Aff., Ex. 11.

The e-mails also revealed WECA involvement in drafting the ordinance at issue in this case. For instance, on May 11, 2015, a member of the WECA wrote to the then-Mayor Segarra. *See* E-mail form Toni Gold to Pedro Segarra, May 11, 2015, Rosow Aff., Ex. 15. The member noted that they "met with Lisa Sylvestri [sic] of the Corporation Counsel's office regarding the deficiencies of the ordinance that emerged from her office last week." *Id.* Other e-mails show the City responding to the concerns of WECA members regarding what the members were concerned would be a "weak ordinance." *Id.*

The records search also produced a memorandum from the Corporation Counsel, dated June 30, 2015 entitled: "City of Hartford Arguments to Support Owner-Occupancy of Rooming Houses in Single Family Zones (R-6, R-7 and R-8)." *See* Rosow Aff., Ex. 16. The memorandum, which Mr. Rosow alleges was drafted in conversation with WECA, Rosow Aff. ¶ 29, states:

> The residency requirement is legally 'reasonable', [sic] that is, it is a rational effort to alleviate a problem or avoid a potential problem. The short term and transient occupancy inherent in a rooming house is inconsistent with the neighborhood structure that, especially, single-family residential zones are designed for, and even a resident agent won't have any long-term commitment to the building or neighborhood. Therefore, requiring owner residency is a reasonable regulatory step to alleviate that inconsistency while still allowing a grand-fathered use."

*Id.* The memorandum also noted that Hartford "contains just two licensed, grand-fathered rooming houses in single-family zones: 62 Kenyon Street (not owner-occupied) and 131 Tremont Street (owner-occupied)." *Id.*

On January 12, 2016, the City adopted a new zoning map, which altered the labeling of areas within the City. The map no longer designated residential areas, but instead changed to "neighborhood" classifications and eliminated the old R-7 zone where the Rooming House is located. Under these new requirements, according to Michael A. Fuschi, Director of Development Services for the City, "the owner occupancy requirement in the rooming house ordinance, Municipal Code Section 16-164, will not be applied" to new owners given revision in zoning map." Fuschi Aff. ¶ 6, Def. Summ. J. Mot., ECF No. 44-2 Ex. 1. As the City explained previously, Zone R-4, R-7, and R-8 "ceased to exist." See Def. Mem., ECF No. 24-1, 2.

Mr. Rosow eventually sold the property on April 2, 2017 for $215,000. Rosow Aff. ¶ 22; *see also* Def. 56(a)(1) Stmt. ¶ 7 (noting sale). The new owner is the manager of Mr. Rosow's other properties in the City, and the sale was negotiated directly between Mr. Rosow and Kenyon, LLC, the new owner. Def. 56(a)(1) Stmt. ¶ 8; *see also* Rosow Dep. at 72. The new

owners were likely to continue to receive a license to operate the property as a rooming house. Def. 56(a)(1) Stmt. ¶ 10; *see also* Fuschi Aff. ¶ 6.

## B. Procedural History

Plaintiffs filed this Complaint on April 20, 2016, seeking damages and injunctive relief. *See* Compl., ECF No. 1. They alleged that the ordinance was unconstitutional and violated the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. *See* Compl. ¶¶ 68-74, 81-84. They also alleged violations of the Connecticut's state Constitution, the Connecticut Fair Housing Act, C.G.S. § 46a-36 et seq., and state zoning laws. Compl. ¶¶ 80-81, 85-87. Plaintiffs simultaneously moved for a preliminary injunction to prevent enforcement of the ordinance. Pl. Prelim. Injun. Mot., ECF No. 2. The parties then stipulated that "Defendant City of Hartford shall not deny, modify, suspend or revoke 62-64 Kenyon Street Hartford, LLC's rooming house license . . . during the pendency of this litigation, including any appeal" and that Plaintiffs would not pursue a preliminary injunction. Stipulation, ECF No. 16.

The City moved to dismiss the Complaint and stay discovery. Def. Mot to Dismiss, ECF No. 24. It argued that the case should be dismissed because subsequent events — primarily, the new zoning map adopted in January, 2016 — had rendered Plaintiff's claims moot. The Court denied the motion, finding that there remained a risk of economic loss and that it was unclear whether the ordinance was truly unenforceable. Ruling at 9, ECF No. 33.

The City now moves for summary judgment on all counts. Def. Mot. Summ. J., ECF No. 44. It argues that Mr. Rosow lacks standing in his individual capacity and that, because the Kenyon Street LLC has sold the Rooming House, any claims for injunctive relief are moot. Def. Mem. in Support of Mot. Summ. J. at 3-4, ECF No. 44-1 ("Def. Mem."). Additionally, it argues that the plaintiffs lack an entitlement to a rooming license, and that state zoning laws and the

Connecticut Constitution do not provide a private right of action. *Id.* at 8-11. Finally, the City

argues it is entitled to summary judgment on the federal and state fair housing claims because

Plaintiffs have failed to demonstrate a disparate impact on a protected group, and Plaintiffs have

alleged no actionable conduct on the part of the City. *Id.* at 11-14.

Plaintiffs responded and stated that they are no longer contesting the state constitutional

or zoning law claims, and that they are no longer seeking injunctive relief. Pl. Opp. Br. at 16.

They argue, however, that the City has misconstrued their federal constitutional claims, and that

the City violated their rights to equal protection based either on a class-of-one or selective

enforcement theory. *Id.* at 19. Finally, they renew their state and federal fair housing claims. *Id.*

at 23-25.

## II.     STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that no

genuine issues of material fact remain in dispute and that it is thus "entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the

suit under the governing law" and a factual issue is "genuine" if "a reasonable jury could return a

verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

In reviewing the record, this Court must "construe the evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary*

*Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citations

omitted). If there is any evidence in the record from which a reasonable factual inference could

be drawn in favor of the opposing party on the issue on which summary judgment is sought,

summary judgment is inappropriate. *See Security Insurance Co. of Hartford v. Old Dominion*

*Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict"). In determining whether summary judgment is appropriate, the Court must consider only admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence") (citation and internal quotation marks omitted); FED. R. CIV. P. 56(e).

## III.    DISCUSSION

The City of Hartford moves for summary judgment on all counts in the Complaint. Plaintiffs, however, state that they are no longer contesting claims II, III, and IV.[2] Therefore, summary judgment is granted with respect to those claims.

Three claims remain. First, Plaintiffs continue to assert numerous constitutional violations; they primarily assert purported a violation of the Fourteenth Amendment's Equal Protection Clause under class-of-one or selective-enforcement theories. Second, they also continue to maintain their claims under state and federal fair housing law. Defendants argue Mr. Rosow lacks standing in his individual capacity to assert claims on behalf of the Rooming House. Additionally, they seek summary judgment on all of the constitutional and statutory violations that would remain.

### A.    Plaintiff Rosow's Standing to Assert Claims on Behalf of the Rooming House

The City argues that it is entitled to summary judgment "on all Counts insofar as they allege harm to Mr. Rosow." Def. Mem. at 4. Its argument is simple: 62-64 Kenyon Street is a

_____

[2] Those claims included the state Constitutional or zoning law claims, as well as injunctive relief.

limited liability company (LLC), of which Mr. Rosow is the sole member. Because the property is held in the name of the LLC, however, the Kenyon Street LLC is a legal entity that can sue and be sued, and "[t]he Court should grant summary judgment for the Defendant City on all Counts insofar as they allege harm to Mr. Rosow." *Id.*

A plaintiff must have standing in order to satisfy the case or controversy requirement of Article III. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). The plaintiff asserting standing must prove three elements: "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Id.* at 162 (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).

There is no question that the Kenyon Street LLC has standing in this case, nor does the City contest the Kenyon Street LLC's standing. Connecticut law, however, is clear that a LLC is "a distinct legal entity whose existence is separate from its members." *O'Reilly v. Valletta*, 139 Conn. App. 208, 214 (2012). Courts have thus repeatedly found that that a "member or manager may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company." *Id.*; *Lundstedt v. People's United Bank,* No. 3:14-cv-01479 (JAM), 2015 WL 540988 at *2 (D. Conn. 2015) ("[A] person who transfers his or her assets to an LLC has no standing to seek damages when those assets—now belonging solely to the LLC—are harmed."); *Varricchio v. Chalecki,* 3:14-cv-00937 (MPS), 2016 WL 5422046 at *4-5 (D. Conn. 2016) (collecting cases). This distinction applies even when the plaintiff is the sole member of the LLC.

Mr. Rosow does not dispute that this rule controls, but instead alleges he has individual standing because he alleges that the City targeted him, rather than the Kenyon Street LLC. Pl.

Opp. Br. at 16-17. The key inquiry, however, is whether — for each claim — the injury runs to the Kenyon Street LLC or to Mr. Rosow individually. *See, e.g.*, *Lundstedt*, 2015 WL 540988 at *2 ("In this case, the injury asserted by plaintiff—the assessment of thousands of dollars in improper and unlawful overdraft charges—is an injury to an LLC, and not an injury to plaintiff.")

Count I asserts a litany of constitutional violations under 42 U.S.C. § 1983. Mr. Rosow has abandoned his claim for injunctive relief, which reduces the Complaint to seeking monetary damages. The *gravamen* of the injuries alleged in Count I, therefore, is that the City's allegedly unconstitutional ordinance limited the value of the property. The Kenyon Street LLC owned the property, which was formed specifically for the purpose of acquiring the rooming house and shielding Mr. Rosow from personal liability. Therefore, any injury would run to the Kenyon Street LLC and not to Mr. Rosow. He therefore lacks standing in his individual capacity, and Mr. Rosow is dismissed as a plaintiff in his individual capacity.

### B.      Count I: Constitutional Violations

Kenyon Street LLC alleged a litany of constitutional claims, specifically that the zoning ordinance unreasonably burdened interstate commerce, violated the Equal Protection Clause "and/or" the Due Process Clause of both the Connecticut and United States Constitutions because it lacked a rational basis, was "unconstitutionally void for vagueness," and constituted an "unfair taking of the Plaintiff's Rooming House License and property." Compl. ¶ 72.

Defendant seeks summary judgment on all claims alleged in Count I. Def. Mem. at 8. They only address at length, however, whether Kenyon Street LLC can show it has a clear entitlement to a license and, therefore, a property interest. Kenyon Street LLC responds that it is

pursuing an equal protection claim that can be sustained under either a class-of-one theory or a theory of selective enforcement. Pl. Opp. Br. at 19.

The Court will grant summary judgment and dismiss all of the Kenyon Street LLC's claims. First, the ordinance survives rational basis review. Kenyon Street LLC has also failed to meet its burden to demonstrate that an extremely high degree of similarity to comparators. The Court therefore determines that summary judgment is appropriate with respect to both equal protection theories advanced by Kenyon Street LLC. Second, it has not placed evidence in the record to support any of the other constitutional claims in Count I and, apart from a passing statement in a footnote, fail to contest these claims. Kenyon Street LLC may not rest solely on the allegations in the Complaint to survive a summary judgment motion; summary judgment is therefore appropriate on the takings, commerce clause, vagueness and due process claims.

### 1. Class-of-One

Kenyon Street LLC does not allege to be a member of a constitutionally protected class. Instead, it argues primarily that the City violated their equal protection rights by treating the rooming house as a "class of one." Pls. Opp. Br. at 19. *See also Komondy v. Gioco*, 253 F. Supp. 3d 430, 440 (D. Conn. 2017) ("A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'") (quoting *Cobb v. Pozzi*, 363 F.3d 89, 109–10 (2d Cir.2004)).

A class-of-one claim must meet two requirements: first, plaintiffs must show they have "been intentionally treated differently from other similar situation;" second, they must show "that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*

528 U.S. 562, 564 (2000). Kenyon Street LLC has not provided a sufficient factual basis to meet either requirement.

Class-of-one claims are reviewed under the "highly deferential nature of rational-basis review." *Gray v. Town of Easton*, 115 F.Supp.3d 312, 317 (D. Conn. 2015). As the Second Circuit has repeatedly recognized, "rational-basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' Rather, we are required to uphold the classification 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (*quoting Heller v. Doe*, 509 U.S. 312, 319-20 (1993)); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001) ("A zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision."(internal citations and quotation marks omitted)); *Gray*, 115 F.Supp.3d at 317 (noting that rational basis review does not demand that the government decisionmaker "actually articulate at any time the purpose or rationale supporting its classification" but instead the court may "ascertain that a purpose may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." (internal quotations omitted)); *Komondy*, 253 F. Supp. 3d at 443-4 ("In particular, with respect to equal protection claims against local governmental officials (such as zoning officers), "the reality is that local town officials engage in a vast range of highly discretionary decisions that affect the property rights and everyday activities of town citizens." (quoting *Gray*, 115 F.Supp.3d at 317)).

In this case, however, the record shows that the City of Hartford has advanced a rationale supporting its requirement that certain rooming houses must have an owner or member. While the City may have targeted 62-64 Kenyon Street, it was not doing so arbitrarily: the record

demonstrates that residents repeatedly complained to city officials about the way the rooming house was run and its impact on the residential neighborhood of which it was a part. *See, e.g.*, Written Testimony from Carolyn West and David J. Getomer at 1, Rosow Aff., Ex. 21 (supporting changes residents and West End Civic Association deemed "necessary changes to make the existence of grand-fathered rooming houses compatible with its neighbors"); Written Testimony from Mary Bernstein, Rosow Aff., Ex. 21 (noting complaints about 62 Kenyon Street and "urg[ing the City] to require owner occupancy at existing rooming houses and to mandate suspension of rooming house licenses for houses that violate the health code and other laws.")

The City also adopted a rationale related to these complaints, as expressed by City Attorney Allan Taylor's memorandum. Memo, Rep. Br., Ex. 23. The residential zones affected are single-family zones, and Attorney Taylor argued that the residency requirement represents:

> a rational effort to alleviate a problem or avoid a potential problem. The short term and transient occupancy inherent in a rooming house is inconsistent with the neighborhood structure that, especially, single-family residential zones are designed for, and even a resident agent won't have any long-term commitment to the building or neighborhood. Therefore requiring owner residency is a reasonable regulatory step to alleviate that inconsistency while still allowing a grand-fathered use."

*Id.* Such a justification would seem to provide a "reasonably conceivable state of facts" and therefore provide a rational basis for the ordinance. *Sensational Smiles, LLC*, 793 F.3d at 284.

Furthermore, the Court is not limited to the proposals the City articulated at the time of enacting the ordinance, but rather the Court can recognize that there could have conceivably been a permissible purpose. *Gray*, 115 F.Supp.3d at 317. It was reasonable for the City to conclude that the type of conduct complained of by Hartford residents might be remedied by requiring an owner to live in the house. Additionally, it was reasonable for the City to tailor its ordinance to specific zones. What is appropriate or necessary in a residential zone, such as the

one in which the Rooming House was situated, will be different than an area zoned for commercial or some other use. It is reasonable that the City might make distinctions based on those differences. The ordinance at issue in this case therefore passes rational basis scrutiny.

Kenyon Street LLC, however, appears to argue that the complaints and the issues the City seeks to remedy through the ordinance are pretextual; the City and WECA were pushing the ordinance merely to target 62-64 Kenyon Street, even though other rooming houses in other zones were also the subject of similar complaints. In support of this conclusion, Kenyon Street LLC cites to the deposition testimony of Daniel Loos, who suggests that there were other rooming houses who had a greater number of complaints but which would be unaffected by the ordinance. *See* Pl. Opp. Br. at 9-10.

But this argument only highlights a second reason why summary judgment is appropriate regarding the class-of-one claim. In alleging a class-of-one violation, the plaintiff bears the burden of demonstrating "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.2006)); *see also Komondy*, 253 F. Supp. 3d at 444 ("Indeed, the plaintiff pursuing a class of one claim must show that the comparator(s) are 'prima facie identical in all relevant respects.'" (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)).

Kenyon Street LLC here has not met that burden, and seems to rely only on the fact that the Rooming House was the only house affected by the ordinance to bypass the requirement. While the fact that one individual is singled out is, by definition, part of a class-of-one claim, a plaintiff cannot merely rest on that fact alone to assert his or her claim. In this case, Kenyon Street LLC, to survive rational basis review, would have needed, at least, admissible evidence of

14

complaints lodged against other rooming houses unaffected by the ordinance, and provided specific details to demonstrate how these other rooming houses served as appropriate comparators. If it proved too difficult to find one comparator, Plaintiff might have attempted to show that "the issues compared are discrete and not cumulative or affected by the character of the project as a whole" and therefore "multiple comparators [might be] sufficient so long as the issues being compared are so similar that differential treatment with regard to them cannot be explained by anything other than discrimination." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222–23 (2d Cir. 2012)

There is no record evidence detailing complaints lodged against other rooming houses. There is no evidence in the record demonstrating how these other rooming houses would be appropriate comparators within the context of this case. There is only the cursory suggestion in Mr. Loos's deposition testimony that such complaints exist. That simple assertion, without more, is not enough to survive summary judgment, given the applicable legal standard here. *See Ruston*, 610 F.3d at 60 ("As the Rustons fail to allege that properties sufficiently similar to theirs were treated more favorably by either the Village or the Town, they have failed to state a 'class of one' equal protection claim."); *Komondy*, 253 F.3d at 445 ("For the reasons set forth below, none of these alleged 'comparators' is contextually similarly situated to Plaintiff. As Defendants assert, Plaintiff has failed to meet the 'similarly-situated' element of his class-of-one claim.").

## 2. Selective Enforcement

Kenyon Street LLC also argues for an equal protection violation under a theory of selective enforcement. Pl. Opp. Br. at 21. A claim of selective enforcement "arises when the government seeks to apply the law to a plaintiff differently than it would to other similarly situated individuals for constitutionally impermissible reasons such as on grounds of a plaintiff's

race or malicious intent." *Gray*, 115 F. Supp. 3d at 319 (D. Conn. 2015). A selective

enforcement claim closely mirrors a class-of-one claim, and it requires "a plaintiff prove[] that

'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that

such selective treatment was based on impermissible considerations such as race, religion, intent

to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure

a person.'" *Brown v. City of Syracuse*, 673 F.3d 141, 151–52 (2d Cir. 2012) (quoting *Diesel v.*

*Town of Lewisboro*, 232 F.3d 92, 104 (2d Cir. 2000)).

Kenyon Street LLC argues that the key difference between a class-of-one claim and a

claim of selective enforcement is that courts have placed a different burden on the plaintiff with

regard to the similarly-situated showing. Pl. Opp. at 22. It suggests that the Court should adopt a

lower standard for the selective enforcement claim, only requiring the plaintiff to demonstrate

that they are roughly equivalent to a comparator or similar in all material aspects. *Id.*

Courts in the Second Circuit have applied different comparator standards for selective

enforcement claims. *Compare Yajure v. DiMarzo,* 130 F.Supp.2d 568, 572 (S.D.N.Y.2001)

(articulating selective enforcement test as "whether a prudent person, looking objectively at the

incidents, would think them roughly equivalent") *with Gray,* 115 F. Supp. 3d at 319 ("But

because the two theories [selective enforcement and class-of-one] themselves are so similar,

there is little reason to suppose why a selective-enforcement claim should not require the same

high degree of similarity between comparators as the Second Circuit requires for a class-of-one

claim.").

The Court need not resolve what standard to apply, because Kenyon Street LLC has not

met either standard. As addressed above, Kenyon Street LLC has placed no evidence in the

record about comparators. Even assuming that a lower standard applied to a selective

enforcement claim, there is no evidence in the record that could lead a juror to conclude that the Kenyon Street LLC has a viable selective enforcement claim.

### 3. Other Constitutional Claims

Defendant moved for summary judgment on all claims in Count I. *See* Def. Mem. at 8. Its brief, however, only addresses whether the Kenyon Street LLC was entitled to a license. As noted above, Kenyon Street LLC responded by arguing class-of-one and selective enforcement. In a footnote, however, the Rooming House stated that "It should be noted that the City does not address all the cause of action identified in Count I" and, therefore, because the "City has the burden of proof on a motion for summary judgment as a matter of law" the City should not be granted summary judgment on these other claims. Pl. Opp. Br. at 23.

As one Court of Appeals noted, "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 305 (D. Conn. 2009) (quoting *Resolution Trust Corp.*, 43 F.3d at 599). Likewise, the Second Circuit has long stated that summary judgment "will not be denied merely because of conclusory allegations or denials made by the opposing party . . . Concrete particulars must be set forth in opposition to the motion." *JSP Agency, Inc. v. Am. Sugar Ref. Co. of New York*, 752 F.2d 56, 59 (2d Cir. 1985); *see also Toro v. Arnold Foods Co.*, 620 F. Supp. 2d 288, 294 (D. Conn. 2009) ("Because the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists, when facing a motion for summary judgment a nonmoving party cannot simply rest on the allegations in its pleadings.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Kenyon Street LLC appears to rest strictly on the allegations from the Complaint with respect to the takings, commerce clause, vagueness and due process claims alleged in Count I. That is not enough at summary judgment.

The City of Hartford therefore is entitled to summary judgment on the entirety of Count I.

**B.    Count V: Violation of the Federal Fair Housing Act**

Count V seeks damages for violations of the Fair Housing Act. The Complaint alleged that "most, if not all of the individuals that reside at the Rooming House from time to time are low-income, transient minorities" and that the zoning ordinance would have "a direct disparate impact on the availability of short term housing for low-income minorities . . . ." Compl. at ¶ 83. The City argues that Kenyon Street LLC has not provided evidence demonstrating the City's actions affected the tenants of the rooming house or the Plaintiff's ability to rent to those tenants. Def. Mem. at 12. It argues that no residents were displaced, and Kenyon Street LLC was not prevented from collecting rent or prevented from operating the rooming house. *Id.*

Successful disparate impact claims "claim involves a comparison between two groups— those affected and those unaffected by the facially neutral policy." *Tsombanidis v. West Haven Fire Department*, 352 F.3d 565, 575 (2d Cir. 2003). Disparate impact claims under the Fair Housing Act are subject to a burden shifting test. *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016). The first step, at issue here, requires: "a plaintiff must first establish a prima facie case by showing, '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" *Id.* (*quoting Regional Economic Community Action program, Inc. v. City of Middletown*, 294 F.3d 35, 52-53 (2d Cir. 2002)).

The Second Circuit requires that "there must be some analytical mechanism to determine disproportionate impact." *Tsombanidis*, 353 F.3d at 576. Plaintiffs alleging disparate impact must show members of a protected group affected by a neutral policy, and then identify similarly situated individuals who are unaffected. *Id.* at 576-77. Plaintiffs normally make this comparison using statistics, but statistical evidence is not required. *Id.* Plaintiffs must just show some qualitative or quantitative comparison that allows a district court to adjudicate the claim. *Id.* at 578.

Kenyon Street LLC has not put any qualitative or quantitative evidence in the record. It relies primarily on the assertion by Mr. Rosow that "[i]t has been my practice for many years to offer quality housing . . . to low-income in individuals via the Rooming House." Rosow Aff. at ¶ 24; *see also* Pls. Surreply Br. at 6. He further asserts that the "low-income minorities . . . would be displaced from their residences if the Rooming House shut down." *Id.* But these "[b]ald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." *De Jesus-Keolamphu v. Vill. of Pelham Manor*, 999 F. Supp. 556, 564 (S.D.N.Y).

The record before the Court contains no statistical evidence. *See, e.g.*, *Tsombanidis*, 352 F.3d at 575-76 ("Statistical evidence is also normally used in cases involving fair housing disparate impact claims."); *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, 801 F. Supp. 2d 12, 16 (D. Conn. 2011) ("Generally, plaintiffs establish such an effect by using statistical evidence to compare those affected by the policy with those unaffected by the policy."). There is no "analytical mechanism" in the record currently before the Court that would allow the Court to determine if the ordinance would have any disparate impact. *Tsombanidis*, 352 F.3d at 576. The record does not compare the impact of the ordinance on individuals from a protected group and

to the impacts on similarly situated persons unaffected by the ordinance. *Id.* at 576-577. Like the class-of-one claim, Kenyon Street LLC has not put anything in the record showing that a "substantial portion" of protected individuals to be impermissibly affected by the ordinance. *Id.*

Even if, as Kenyon Street LLC argues, Mr. Rosow "knows the make-up of his tenants and can testify to that at trial," those facts alone are not enough. Pl. Surreply Br. at 6. This testimony would only demonstrate that an ordinance affected Mr. Rosow's tenants and that Mr. Rosow's tenants are members of a protected class. But Kenyon Street LLC must show the disparate impact between the protected individuals and others similarly situated. This information would be outside of Mr. Rosow's personal knowledge.

As a result, the Court grants the City of Hartford's motion for summary judgment with respect to the Fair Housing Act Claims.

### C.      Count VI: Violation of the Connecticut Fair Housing Act

Connecticut's Fair Housing Law prohibits discrimination in a variety of circumstances. Count VI of the Complaint alleges that the ordinance violated Connecticut's Fair Housing Act, C.G.S. 46a-36 *et seq*. (CFSA) and interfered with "the Plaintiffs' practice of providing quality housing to low income and minority individuals needing short term housing . . . ." Compl. at ¶ 85-87.

As a result of the analysis above, however, all federal claims have been dismissed and there would no diversity jurisdiction giving this Court jurisdiction over the remaining state law claims. While Mr. Rosow is a citizen of Arizona, he has been dismissed from the lawsuit for lack of standing and, even he was still in the lawsuit, there would not be complete diversity given that the LLC is registered in Connecticut.

The Court therefore must decide whether or not to continue to exercise its supplemental jurisdiction over Kenyon Street LLC's state law claim. Under federal law, "district courts may decline to exercise supplemental jurisdiction" if, as is the case here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). *See also Boyar v. YMCA of Norwalk, Inc.*, No. 3:06-CV-663RNC, 2008 WL 1743496, at *1–2 (D. Conn. Apr. 15, 2008) ("When federal claims are dismissed before trial, a district court may decline to exercise supplemental jurisdiction over state claims. This is the appropriate course to take with regard to plaintiff's CFEPA claim because, unlike the ADA, CFEPA does not require a plaintiff to prove that a chronic condition is substantially limiting." (internal citations omitted)).

The Court declines to exercise supplemental jurisdiction over the state claims at issue in this case. *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

As a result, Rooming House's claims alleging violations of the state Fair Housing statute will be dismissed without prejudice to being refiled in state court.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut, this 29th day of December, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE