UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| 62-64 KENYON STREET, HARTFORD, LLC,<br>    Plaintiff,<br><br>v.<br><br>CITY OF HARTFORD,<br>    Defendant. | No. 3:16-cv-617 (VAB) |

**RULING AND ORDER ON PLAINTIFF'S MOTION TO WITHDRAW ACTION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On April 20, 2016, 62-64 Kenyon Street Hartford, LLC ("Kenyon Street" or "Plaintiff"), a Connecticut limited liability company that operated a rooming house on Kenyon Street in Hartford, Connecticut and its sole member, Paul Rosow, filed this lawsuit alleging violations of statutory and constitutional rights by the city of Hartford ("Hartford" or "Defendant"), following a revision of the rooming house section of Hartford's municipal code. Compl., ECF No. 1.

On December 29, 2017, the Court dismissed Plaintiff from the action, granted Defendant's motion for summary judgment, and closed the case. Mot. for Summ. J., ECF No. 44; Order Granting Mot. for Summ. J. ("First Summ. J. Order"), ECF No. 58. On January 5, 2018, Plaintiff moved for reconsideration. Pl.'s Mot. for Recons., ECF No. 60. The Court denied the motion with respect to Plaintiff's equal protection claims. Ruling on Mot. for Recons., ECF No. 64. The Court, however, granted the motion with respect to Plaintiff's void for vagueness, dormant Commerce Clause, and Takings Clause claims, finding that Plaintiff had received insufficient notice that those claims were to be reviewed. *Id.*

On July 13, 2018, Defendant submitted a supplemental memorandum in support of its motion for summary judgment. Def.'s Supp. Mem. in Supp. of Mot. for Summ. J., ECF No. 67. On July 27, 2018, Plaintiff filed its opposition to the revised motion for summary judgment. Pl.'s Supp. Obj. to Mot. for Summ. J., ECF No. 68. On October 24, 2018, the Court held a hearing on the revised motion for summary judgment. Minute Entry, ECF No. 74.

On November 14, 2018, Plaintiff moved to amend the Complaint to remove its federal and state takings claims. Mot. to Amend, ECF No. 75. The Court granted Plaintiff's motion to amend. ECF No. 76.

On November 15, 2018, Plaintiff moved to withdraw the action entirely. Pl.'s Mot to Withdraw Action, ECF No. 77.

For the reasons discussed below, the Court **DENIES** Plaintiff's motion to withdraw this case.

The Court **GRANTS** Defendant's motion for summary judgment and dismisses Plaintiff's void for vagueness and dormant Commerce Clause claims. The Court further declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the licensee-occupancy provision of Hartford's rooming house ordinance, § 18-164 of the Hartford Municipal Code, which states:

> The licensee who obtains a license under this Article shall reside in the rooming house. In the R-6, R-7, and R-8 zoning districts, no license or license renewal shall be issued to a licensee who is not the owner or majority owner of the property. A licensee who is not the owner of the real [sic] shall have a valid power of attorney from the owner, not more than one (1) year old, which gives the licensee authority to do all things necessary to manage and operate the rooming house, including, without limitation, to collect, deposit and spend the rents from roomers, to pay bills, to make repairs, to correct violations, and to allow inspections of the premises.

MUNICIPAL CODE: CITY OF HARTFORD, ch. 18, art. VII, § 18-164.

The Court assumes the parties' familiarity with the facts as set forth in its earlier rulings on Defendant's motion to dismiss and motion for summary judgment. Order Denying Mot. to Dismiss, ECF No. 33; First Summ. J. Order.

Plaintiff alleges "additional material facts" in its opposition to summary judgment on the reconsidered counts, Pl.'s Rule 56(a)(2) Statement of Facts ("Add'l Material Facts"), ECF No. 68-1.

The Court's earlier ruling did not fully consider these "additional material facts": (1) the property has been a rooming house in the west-end of Hartford since the early 1900's, ¶ 2; (2) the rooming house has been licensed since 1960, ¶ 4; (3) since 1977, Hartford's municipal code has required the owner of the rooming house to either reside there or to appoint an agent, ¶ 6; (4) Mr. Rosow had appointed an agent to live in the house "[a]t all times . . . as permitted by law", ¶ 7; (5) Hartford and the West End Civic Association ("WECA") sought advice from the mayor's wife, attorney Sara Bronin, "on ways to suspend the Rooming House license", ¶¶ 8–10; (6) Daniel Loos, former Director of Licenses and Inspections, ordered two surprise inspections of the property though he had not done so in the five years he worked for the city, ¶¶ 11–12; (7) Hartford allegedly singled out the rooming house in its inspections and documentation requests, ¶¶ 13–14; (8) WECA and Hartford allegedly conspired to rid the neighborhood of Plaintiff's rooming house, ¶¶ 15–39; (9) a buyer allegedly walked away from the deal to purchase the rooming house after and because of the city's ordinance, ¶¶ 43–47; (10) the ordinance allegedly does not prescribe how limited liability corporations (LLCs) could meet its requirements, ¶¶ 48–50; (11) the rooming house's typical residents allegedly were "low income minorities, many from out of state", ¶¶ 50–51; and (12) Plaintiff allegedly charged below market rents for rooms. ¶ 52.

## II.   STANDARD OF REVIEW

### A. Motion to Withdraw Action

Under Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may voluntarily dismiss an action without a court order before an opposing party serves an answer or motion for summary judgment. FED. R. CIV. P. 41(a)(1)(A)(i). Once an answer or motion for summary judgment has been served, however, a plaintiff must seek a court order for dismissal. FED. R. CIV. P. 41(a)(2).

Rule 41 does not permit voluntarily dismissal absent a court order following summary judgment because "such a motion may require even more research and preparation than the answer itself . . . ." *See Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 107 (2d Cir. 1953) ("The amount of research and preparation required of defendants was stressed by the Committee Note when Rule 41(a)(1) was amended in 1948 as a reason for adding the reference to a motion for summary judgment.").[1] Under Rule 41(a)(2), a Court may grant the dismissal without prejudice on "terms that the court considers proper", FED. R. CIV. P. 41(a)(2), but "[v]oluntary dismissal without prejudice is . . . not a matter of right." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

### B. Motion for Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that no genuine issues of material fact remain in dispute and that it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under

---

[1] While the Second Circuit's decision in "*Harvey Aluminum* has not been well received." *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979), the Court cites this decision for its discussion of the Advisory Committee on the Rules of Civil Procedure's 1948 change to Rule 41.

the governing law" and a factual issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 308 (2d Cir. 2013) (citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is inappropriate. *See Security Insurance Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict").

### III. DISCUSSION

In addition to the failed equal protection claims dismissed in the Court's first order on summary judgment—putting forth class-of-one and selective enforcement theories—Plaintiff seeks relief under two alternative constitutional theories: (1) a due process violation on account of the ordinance's alleged vagueness, and (2) a dormant Commerce Clause violation due to the ordinance's owner-occupancy requirement.

Before the Court addresses these two claims, however, the Court must determine whether Plaintiff may be permitted to withdraw its action at this stage in the proceedings. The answer is no.

On the merits, Plaintiff's alternative constitutional theories of due process and under the dormant Commerce Clause fail to provide a basis for relief, as did Plaintiff's equal protection claims.

### A. Motion to Withdraw Action

In the Second Circuit, "[t]wo lines of authority have developed with respect to . . . dismissal without prejudice [following late-breaking motions to withdraw]. One line indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit. Another line indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors . . . ." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006) (internal quotations and citations omitted). The *Zagano* factors are: "plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Zagano*, 900 F.2d at 14; *see also D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir.1996).[2] Under either standard, Plaintiff's motion must be denied.

Plaintiff has not been diligent in moving for dismissal; indeed, this case is in its final pre-trial stage, awaiting a ruling on a second motion for summary judgment. Plaintiff filed this lawsuit in April 2016. ECF No. 1. Since then, the parties have fully briefed the issues, conducted discovery,[3] and participated in numerous conferences and hearings before the Court, including a hearing on Defendant's motion to dismiss in December 2016, ECF No. 32; a hearing on Defendant's motion for summary judgment in October 2017, ECF No. 57; and a second hearing

---

[2] The overwhelming majority of courts in this Circuit follow *Zagano* not *Camilli*. Research on the caselaw suggests that *Camilli* has been cited to date in 70 cases; while there are more than 300 case citations for *Zagano*. *See* WestlawNext, "Citing References: Cases . . . Second Circuit" for *Camilli v. Grimes*, 436 F.3d 120 (2d Cir. 2006); *Zagano v. Fordham Univ.*, 900 F.2d 12 (2d Cir. 1990) [research performed on Nov. 20, 2018].

[3] *E.g.*, A deposition of Hartford's former Director of Licenses and Inspections lasting more than three hours, ECF No. 68-3; and a Deposition of the City Council's attorney, ECF No. 68-36.

on Defendant's motion for summary judgment in October 2018. ECF No. 74. Plaintiff's motion to withdraw therefore is neither diligent nor timely.

Moreover, Hartford likely expended considerable effort and expense on this matter. Plaintiff's briefings have been lengthy and detailed. Plaintiff's first summary judgment brief totaled 268 pages, including seven exhibits, ECF No. 45; Plaintiff's second summary judgment brief totaled 365 pages, including 38 exhibits. ECF No. 68. Defendant has now responded to more than 600 hundred pages of briefs and defended against this suit for two-and-a-half years. Plaintiff's motion to withdraw follows significant motion practice to which Defendant has already responded.

Finally, Plaintiff has not provided an adequate explanation for seeking dismissal. Its motion to withdraw contains a one-sentence justification: "The Plaintiffs plan to go in a different direction." Pl.'s Mot. to Withdraw Action, ECF No. 77, at 1. Given the advanced posture of this litigation and the lengthy motion practice, this single sentence is insufficient justification for this late-breaking withdrawal. Further, given that Hartford has now defended two summary judgment motions regarding several constitutional claims, it is in the interests of justice to address Plaintiff's remaining federal claims. Hartford should not have to address these claims yet again. *Zagano v. Fordham Univ.*, 900 F.2d 12, 15 (2d Cir. 1990) ("Judge Owen was not in error in concluding that *Zagano*'s desire to abandon the Title VII action after imposing substantial costs on defendants was evidence that 'she was perfectly happy to have the lawsuit out there until all of a sudden she had to do something with it'. . . .").

The Court therefore **DENIES** the Plaintiff's motion to withdraw the action.

### B. Vagueness

A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Chicago v. Morales*, 527 U.S. 41, 56 (1999).

"The relevant inquiry under the first vagueness ground is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y.*, 660 F.3d 612, 621 (2d Cir. 2011), *citing Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008) (internal quotation marks omitted).

The second ground for determining unconstitutional vagueness [is] whether the ordinance fails to "provide explicit standards for those who apply [it] . . . . " *Cunney*, 660 F.3d. at 621 (finding a local ordinance unconstitutionally vague when a city conducted three contradictory compliance reviews which yielded contradictory results on whether a plaintiff's house violated the city's code), citing *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007).

"As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Id*. at 65 (affirming the lower court's ruling that New York's First Degree kidnapping statute was not unconstitutionally void even though it did not specify how long a kidnapped person had to be missing before she was presumed dead, because the statute contained additional language that provided objective and clear guidance on the statute's meaning).

Plaintiff argues that Hartford Municipal Code § 18-164 is unconstitutionally vague because an ordinary person would not know how it applied to an LLC or other business entity, Add'l Material Facts ¶48-50, and the Director of Licenses and Inspections did not know how the city would enforce it. Pl.'s Supp. Obj. to Mot. for Summ. J. at 15. Defendant argues that the ordinance is clear on its face, both as to who it regulates and how it will be enforced. D. Supp. Mem. in Supp. of Mot. for Summ. J. at 2–3. The Court agrees.

The inquiry must start with the text; if the text of § 18-164 provides sufficient notice, then Plaintiff's claim of vagueness fails. *See Cunney*, 660 F.3d. at 623 ("Where the ordinance has a clear core, the inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the ordinance that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the ordinance's application in the circumstances.") Here, the relevant language is: "The licensee who obtains a license under this Article shall reside in the rooming house." MUNICIPAL CODE: CITY OF HARTFORD, ch. 18, art. VII, § 18-164. There is nothing vague about this language: a licensee must reside in the rooming house. The licensee of a rooming house is notified by the ordinance that a reasonable enforcing officer will enforce the ordinance against licensees who do not reside in their rooming houses. Plaintiff nevertheless seeks to have the ordinance declared unconstitutionally vague because it is an LLC. This argument also fails.

The text of § 18-164 clearly notified rooming house licensees that they would have to reside in their rooming houses. While the ordinance arguably may be ambiguous as to other LLCs, the ordinance's hypothetical application to other LLCs is beyond the scope of the present action and the Court's jurisdiction in this matter. *See Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir.2006) ("[T]he courts of the United States are not often willing to hear claims based on third-

party or *jus tertii* standing, in which litigants argue the unconstitutionality of hypothetical enforcements of the law rather than the actual enforcement that triggered the litigation."); *MacPherson v. Town of Southampton*, No. 07-CV-3497 DRH AKT, 2013 WL 6058202, at *23 (E.D.N.Y. Nov. 14, 2013) (finding no exception to the general rule against third-party standing in a case where Plaintiffs failed to establish injury under a town's rental laws). There is no ambiguity as to how the ordinance would apply to 62-64 Kenyon Street.

While 62-64 Kenyon Street is an LLC, there is only one person associated with it: its sole member, Paul Rosow. Add'l Material Facts ¶ 2 ("Plaintiff Paul Rosow is the sole member of the LLC . . . ."). As a result, there is no ambiguity as to how the ordinance would apply to 62-64 Kenyon Street; its sole member, Paul Rosow, would have to live on site.

Moreover, as 62-64 Kenyon Street concedes, Hartford officials knew that 62-64 Kenyon Street was a one-person LLC and the LLC knew that the ordinance would require Mr. Rosow, its sole member, to live in the rooming house to satisfy the requirements of the ordinance. *See* Add'l Material Facts ¶ 18 ("The owner-occupied requirement was to be implemented into the amended Ordinance because, at this time, WECA knew that Rosow permanently resided in Arizona and the owner-occupancy requirement would force the Plaintiff to abandon the use of the property as a rooming house and eradicate it from the neighborhood."). Indeed, as the record indisputably makes clear, when the ordinance became effective, potential buyers of 62-64 Kenyon Street also understood that they would have to reside in the rooming house. Pl.'s Supp. Obj. to Mot. for Summ. J. at 35. In fact, as Plaintiff argues, one potential buyer backed out of the sale for this reason and the ultimate buyer paid less than Plaintiff expected "because of the Ordinance." *Id.*

Because § 18-164 provides sufficient notice, Hartford is entitled to summary judgment on Plaintiff's void for vagueness claim.

## C. Commerce Clause

The Commerce Clause provides that "Congress shall have power . . . [t]o regulate commerce . . . among the several states." U.S. CONST. art I, § 8, cl. 3. The Supreme Court has "long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). This "dormant" Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). The Supreme Court's dormant Commerce Clause jurisprudence "is driven by a concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *McBurney v. Young*, 569 U.S. 221, 235 (2013) (internal quotations omitted), (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–274 (1988)); *see also*, *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("The crucial inquiry . . . must be directed to determining whether [the challenged statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.").

Absent clear discrimination, however, and "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). While the Supreme Court "has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere," *Pike*, 397 U.S. at 145, the Supreme Court in *Pike* distinguished between protectionist

11

state statutes and "state legislation in the field of safety where the propriety of local regulation has long been recognized . . . ." *Id.* at 143; *see also Kassel v. Consol. Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981) ("Those who would challenge such bona fide safety regulations must overcome a 'strong presumption of validity.'") (*quoting Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524 (1959)).

Plaintiff argues that Hartford Municipal Code § 18-164 impermissibly discriminates against out-of-state commerce. Pl.'s Supp. Obj. to Mot. for Summ. J. at 18, 21. Defendant argues that the ordinance is entirely local in scope and that Plaintiff has alleged no facts showing "even incidental effects on interstate commerce." D. Supp. Mem. in Supp. of Mot. for Summ. J. at 4. The Court agrees.

Significantly, the text of Hartford Municipal Code § 18-164 does not refer to Connecticut or make any express distinctions between interstate and intrastrate commerce. The rooming house ordinance is entirely local in scope and does not affect the City of Hartford in its entirety, as it is limited to properties in zones R-6 through R-8 of Hartford.[4]

Moreover, the ordinance equally burdens all owners not residing in their rooming houses, whether they live in Connecticut or any other state. Mr. Rosow, 62-64 Kenyon Street's sole member, lives in Arizona. But Mr. Rosow would be equally affected by Hartford's ordinance if he lived in Bridgeport, Connecticut or West Hartford, Connecticut, a town even closer to Hartford. The exact location of the owner's residence thus is an incidental interstate effect of the ordinance, not a primary one; the ordinance therefore withstands this dormant Commerce Clause

---

[4] Section 18-164 may be more analogous to state licensing statutes than a zoning ordinance, but the result would be the same. *See, e.g.,* CONN. GEN. STAT. ANN. § 19a-80 (explaining that the state grants nontransferable licenses to the child care center owner for a specific location), and municipal ordinances for dog groomers. *See Lowney v. Zoning Bd. of Appeals of Black Point Beach Club Ass'n*, 144 Conn. App. 224, 232, 71 A.3d 670, 675 (2013) (upholding the denial of plaintiff's application for a home dog-grooming facility because it would create too much traffic.).

challenge. *See Pike*, 397 U.S. at 142 ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").[5]

Plaintiff's reliance on the U.S. Supreme Court's decision in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964), is misplaced. *Heart of Atlanta Motel* and its progeny address the power of Congress to regulate local establishments and land-holdings under the Commerce Clause, not whether a local health and safety regulation aimed at houses with rooms for rent, such as this one, violates the Commerce Clause. *Id.*, *see also, e.g.*, *Preseault v. I.C.C.*, 853 F.2d 145, 150 (2d Cir.1988), aff'd, 494 U.S. 1 (1990) (holding that Congress's use of abandoned railroad lines as hiking trails "constitutes a valid exercise of congress's authority under the commerce clause.")

As a result, Hartford is entitled to summary judgment on Plaintiff's dormant Commerce Clause claim.

Having dismissed Plaintiff's remaining federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to

---

[5] Though the Court looks no further than the text of § 18-164 to determine the ordinance's reasonable relationship to health, safety, morals, and/or general welfare, the filings of both Plaintiff and Defendant contain ample support for this proposition. *See, e.g.*, Mot. for Summ. J., Ex. 4, Deposition of Daniel Loos, at 93-94, 99 (stating that the city's ordinance was prompted by concerns over 62-64 Kenyon Street, not other rooming houses, and reporting "numerous complaints" from various Hartford residents regarding 62-64 Kenyon Street) Pl.'s Supp. Obj. to Mot. for Summ. J., Ex A-12–13; E–F (regarding public complaints against 62-64 Kenyon Street by neighbors, including a July 23, 2014 bedbug complaint, and neighbors of the rooming-house frustrated with health and safety issues.). One neighbor described a "rat problem" that lasted more than a year due to insufficient trash cans. Pl.'s Supp. Obj. to Mot. for Summ. J., Ex. O. More than eight complaints were lodged with the Hartford during the final three years that Plaintiff owned and operated the premises, including a bedbug complaint for room 10. Pl.'s Supp. Obj. to Mot. for Summ. J., Ex. A-13.

exercise jurisdiction over the remaining state-law claims."). The Court finds that the "values of judicial economy, convenience, fairness, and comity" favor reserving any remaining state law claims on the appropriateness of Hartford's municipal ordinance for adjudication and enforcement by the state courts. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 352 (1988).

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to withdraw this case, **GRANTS** Defendant's motion for summary judgment and dismisses Plaintiff's void for vagueness and dormant Commerce Clause claims, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

The Clerk of the Court is directed to close this case.

SO ORDERED this 26th day of November, 2018 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE